IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-08-0231 |
| | § | |
| RUTHERFORD OIL CORPORATION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This is an action under the Clean Water Act ("CWA"), 33 U.S.C. §§ 1311, 1344, and the Rivers and Harbors Act ("RHA"), 33 U.S.C. § 403. The United States seeks injunctive relief and civil penalties for what it alleges are five separate instances of illegal "prop washing" in East Galveston Bay between February 2003 and August 2004. "Prop washing" occurs when vessels are operated in shallow water, causing the propellers or the bottoms to disturb the bed and to redeposit the soil and other materials into other areas. The United States alleges that the prop washing occurred while the defendants were moving oil rigs through shallow areas of the Bay. The United States first sued Rutherford Oil Corporation and Brown Water Marine Service, Inc., a marine tug operator. (Docket Entry No. 1). Rutherford Oil then filed a third-party complaint against Tiger Towing, Inc.; Transinland Marine, Inc.; Stagg Marine, Inc.; Triple S Marine, LLC; Henry's Towing, Inc.; Henry's Marine Service, Inc.; Caillou Island Towing Company, Inc.; and Inland Marine Management Corporation. (Docket Entry No. 17). The United States subsequently added Caillou Island Towing, Triple S Marine, Inland Marine Management, and Henry's Marine Service[1] as

---

[1] Henry's Marine Service has filed a motion to dismiss the government's claims under FED. R. CIV. P. 12(b)(4) and 12(b)(6). (Docket Entry No. 101). After that motion, the government voluntarily dismissed its claims against Henry's

defendants in an amended complaint.  (Docket Entry No. 37).[2]

The following motions are pending:

- Inland Marine Management has moved to dismiss the claims against it under Rule 12(b)(2).  (Docket Entries No. 43, 50).  The government and Rutherford Oil have responded.  (Docket Entries No. 47, 54).  Inland Marine has replied, (Docket Entry No. 55).

- Caillou Island Towing has filed a motion for partial summary judgment.  (Docket Entry No. 93).  The government has responded, (Docket Entry No. 99).

- Brown Water Marine has moved for summary judgment.  (Docket Entry No. 96).  The government has responded, (Docket Entry No. 103), and Brown Water Marine has replied, (Docket Entry No. 119).

- The government has filed a cross-motion for this court to set a scheduling order that precludes the defendants from filing summary judgment motions until 30 days after discovery closes, which is scheduled to occur on September 5, 2010.  (Docket Entry No. 103).  Caillou Island Towing and Brown Water Marine have filed responses opposing this motion.  (Docket Entries No. 109, 110).

Based on the motions and responses, the record, and the applicable law, this court:

- defers deciding Inland Marine Management's motions to dismiss under Rule

---

Marine Service under FED. R. CIV. P. 41(a)(1).  (Docket Entry No. 107).  Henry's Marine Service's motion is denied as moot.

[2] Months later, Caillou Island Towing sought to add yet more third-party defendants.  This motion, unlike prior motions to add third-party defendants, was vigorously opposed by both the government and Rutherford Oil.  The motion for leave was denied because at this late stage in the case, adding yet more defendants would have severely disrupted the discovery already scheduled, further delayed a case plagued by delays, and would have significantly prejudiced the existing parties.  (*See* Docket Entries No. 105, 124).

>12(b)(2) pending limited additional discovery;

- grants in part and denies in part Caillou Island Towing's motion for partial summary judgment;

- grants in part and denies in part Brown Water Marine's motion for summary judgment; and

- denies the government's motion for an order precluding any summary judgment motion until 30 days after discovery ends.

The reasons for these rulings are explained below.

**I.    Background**

In this suit, filed on behalf of the Secretary of the Army, the United States alleged five instances in which Rutherford Oil and one of its marine tug operator contractors, Brown Water Marine, "and/or Rutherford's other contractors," engaged in prop washing during activities relating to drilling wells in Galveston Bay and East Galveston Bay. The United States alleged that prop washing occurred in February 2003, March 2003, November 2003, July 2004, and August 2004. The United States alleged that the prop washing resulted in the discharge of pollutants into navigable waters without authorization, in violation of the CWA, 33 U.S.C. §§ 1311, 1344, and the unauthorized excavating, filling, modifying, or altering of the condition or capacity of a navigable water of the United States, in violation of the RHA, 33 U.S.C. § 403. The United States sought an injunction requiring Rutherford Oil and Brown Water Marine, at their own expense, to remove the materials that were placed in violation of these statutes, to restore the damage caused by the unlawful activities, and to pay a civil penalty. (Docket Entry No. 1).

Rutherford Oil previously moved to dismiss the first two claimed violations, allegedly

occurring in February and March 2003, under Rule 12(b)(6), on the basis of the statute of limitations. (Docket Entry No. 11). This court denied the motion, but without prejudice to the reassertion of the arguments, if appropriate, in a motion for summary judgment. (Docket Entry No. 15). Brown Water Marine and Caillou Island Towing have both moved for summary judgment that limitations bars the claim for civil penalties for the 2003 prop washing incidents. The legal issues raised by those motions are whether the discovery rule or the continuing-violations rule apply. These legal issues are addressed in this memorandum and opinion. Brown Water Marine also moves for summary judgment on its liability for the other alleged prop-washing incidents, arguing that the evidence is insufficient to warrant trial. The United States responds that the record discloses sufficient evidence to preclude summary judgment as to all but the last alleged violation and that as to this last violation, additional discovery is likely to reveal disputed fact issues that preclude summary judgment. In essence, the United States moves for additional time to take discovery under Rule 56(f) before completing its response to Brown Water Marine's summary judgment motion as to the alleged violations occurring after 2003. Because discovery is incomplete, this court denies Brown Water Marine's motion for summary judgment insofar as it seeks dismissal of the entire case against it on the basis that the evidence does not create a fact issue as to liability. Brown Water Marine may seek summary judgment on the merits once the discovery is complete.

**II.     The Motions for Summary Judgment on Limitations**

Before reaching the merits of the motions, it is important to clarify the scope of relief appropriate for each defendant if it prevails. The government's amended complaint does not specify which defendants it alleges are responsible for which incidents. Instead, it alleges "Rutherford and one or more of the Marine Contractors," including Brown Water Marine and Caillou Island Towing,

4

were involved in each incident. (Docket Entry No. 37 at ¶¶ 33, 38, 43, 48, 53). Because the government named Brown Water Marine in its original complaint on November 10, 2008, Brown Water Marine claims only that the limitations defense precludes the government from seeking civil penalties for the February and March 2003 incidents. (Docket Entry No. 96 at 2). Caillou Island Towing's situation is different. In its motion, it urges complete protection from civil penalties because it was involved only in the February 2003 incident, more than five years before the government first named the company in an amended complaint filed on August 11, 2009. (*See* Docket Entry Nos. 37; 93-2 at 2–3). The government argues dismissing all penalty claims against Caillou Island Towing is inappropriate, because the company was allegedly involved the November 2003 incident as well as the February 2003 incident. Because the November 2003 incident is also more than five years before the government's amended complaint, the statute of limitations would bar civil penalties as to it, too, unless the government's allegations against Caillou Island Towing in the amended complaint relate back to the original complaint under FED. R. CIV. P. 15(c), *see Krupski v. Costa Crociere S. p. A*, 130 S. Ct. 2485, 2494 (2010). The parties have not yet briefed the issue. If this court agrees with Caillou Island Towing's legal arguments, the appropriate relief on the present record would be to bar civil penalties against this defendant except as to its alleged involvement in the November 2003 incident pending the parties' further briefing.

      **A.**    **The Summary Judgment Standard**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

None of the parties indicates any factual dispute that would preclude summary judgment if § 2462 does not incorporate the discovery rule and if failing to remedy damage caused by a CWA

violation does not constitute a continuing violation.

### B. The Statutory Limitations Language

The United States seeks civil penalties under the CWA, 33 U.S.C. §§ 1319(d), 1344(s)(4). (Docket Entry No. 37, ¶ 85). Multiple courts have held that 28 U.S.C. § 2462 (2000) provides the statute of limitations actions by the United States to impose civil penalties under the CWA. *See United States v. Banks*, 115 F.3d 916, 918 (11th Cir. 1997); *Pub. Interest Research Group of N.J., Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 73–75 (3d Cir. 1990); *United States v. Hobbs*, 736 F. Supp. 1406, 1408–09 (E .D. Va. 1990). This section provides:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462.

Various courts have held that § 2462 does not apply to claims for injunctive relief. *See United States v. Telluride Co.*, 146 F.3d 1241, 1248–49 (10th Cir. 1998); *Banks*, 115 F.3d at 918–19; *Hobbs*, 757 F. Supp. at 1410. The statute does not apply to equitable relief, but rather to "any civil fine, penalty, or forfeiture, pecuniary or otherwise. . . ." 28 U.S.C. § 2462; *see also Hobbs,* 736 F. Supp. at 1410 (stating that § 2462 "by its own terms, has no bearing on suits in equity."); *N.C. Wildlife Fed'n v. Woodbury,* No. 87-584-CIV-5, 1989 WL 106517, at *3 (E.D. N.C. April 25, 1989) (holding that § 2462 did not bar a claim under the CWA for equitable relief). "Statutes of limitation sought to be applied to bar rights of the government, must receive a strict construction in favor of the government." *E.I. Du Pont De Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924); *see also BP*

*America Prod. Co. v. Burton*, 549 U.S. 84, 95–96 (2006).  As noted above, Brown Water Marine and Caillou Island Towing do not seek to apply § 2462 to the government's claim for injunctive relief.  The only question is whether § 2462's application to civil penalties is subject to the discovery rule or the continuing violation theory.

### 1.     The Discovery Rule and § 2462

The Supreme Court has not adopted a uniform discovery rule.  *TRW Inc. v. Andrews*, 534 U.S. 19, 27 (2001).  The Court has applied the discovery rule only in certain circumstances, such as fraudulent concealment, *Holmberg v. Almbrecht*, 327 U.S. 392, 397 (1946), and certain kinds of cases, such as medical malpractice, "where the cry for a discovery rule is loudest," *Rotella v. Wood*, 528 U.S. 549, 550 (2000).  When the statute creating the cause of action specifies a statute of limitations, the Court has looked to the statutory language and used traditional construction tools to determine whether the discovery rule should be recognized as an exception to limitations.  *TRW Inc.*, 534 U.S. at 27 (applying the rule that "when Congress enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of a contrary legislative intent" (citing *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17 (1980))).  In this case, the statutory language of § 2462 does not support recognizing the discovery rule.

In *United States v. Core Laboratories, Inc.*, the Fifth Circuit defined the phrase "the date when the claim first accrued" in § 2462 as "the date of the underlying violation."  759 F.2d 480, 482 (5th Cir. 1985).  It is on this case that the defendants principally rely.  In *Core*, the government sought civil penalties for violations of the Export Administration Act.  *Id.* at 481.  The parties in that case agreed, as they do here, that § 2462 applied to the action.  *Id.*  The issue in *Core* was whether the five-year limitations period began to run at the time of the alleged violation or at the conclusion

of administrative proceedings concerning that violation. *Id.* Rejecting cases offered by the government, the court observed that "apply[ing] the reasoning of cases construing other statutes to the statute in question here would be justified were there no authority directly on point, but that is not the case." *Id.* at 482. The court looked to decisions construing previous versions of § 2462 and concluded that "the date of the underlying violation has been accepted without question as the date when the claim first accrued, and, therefore, as the date on which the statute began to run." *Id.* at 482 (collecting cases). *Core's* interpretation of § 2462 is consistent with the general rule that a cause of action "accrues when it comes into existence." *United States v. Lindsay*, 346 U.S. 568, 568 (1954).

Nine years after *Core*, the D.C. Circuit held that actions for civil penalties under the Toxic Substances Control Act accrue when the violations occur, not when the EPA did or should have discovered them. *3M Co. (Minn. Mining & Mfg.) v. Browner*, 17 F.3d 1453, 1460–63 (D.C. Cir. 1994). Like the Fifth Circuit, the D.C. Circuit focused on the long line of cases of interpreting causes of action subject to § 2462 as accruing at the time the violation occurs. *Id.* at 1461–62 (citing *Core*, 759 F.2d at 482). In particular, the court focused on an 1871 interpretation of the 1839 version of the statute. The court concluded in 1871 that "the claim 'did so accrue, as against the defendant in this case, when the defenses as alleged were committed. . . . [I]gnorance does not prevent the running of the statute or the accruing of the forfeiture.'" *Id.* at 1461 (quoting *United States v. Maillard*, 26 F. Cas. 1140, 1143 (S.D. N.Y. 1871) (alterations in *3M Co.*)). The D.C. Circuit supported the result by distinguishing actions for civil penalties, in which the discovery rule generally does not apply, from tort suits for damages, in which the discovery rule may apply. An action in tort is incomplete until the plaintiff has been damaged. *Id.* By contrast, the government

9

may seek civil penalties as soon as a violation occurs. *Id.*

The fact that § 2462 includes a provision for tolling limitations if the defendant is absent from the United States so as to prevent service of process, but does not include any provision for tolling based on the discovery rule, also weighs against applying the discovery rule for CWA actions. When a statute of limitations designates particular exceptions to the rule that the statute runs from the time of accrual and does not include the discovery rule in those exceptions, that ordinarily means that Congress intended to exclude the application of the discovery rule. *TRW Inc.*, 534 U.S. at 28–29 (finding no general discovery rule in 15 U.S.C. § 1581p when the statute designated fraudulent concealment as tolling limitations). Here, the only tolling provision in the statute is when the defendant cannot be found within the United States to allow service of process. This explicit exception "indicate[s] . . . that Congress did not intend courts to read other unmentioned, open-ended, 'equitable' exceptions into the statute that it wrote." *United States v. Brockamp*, 519 U.S. 347, 352 (1997) (refusing to allow equitable tolling under 26 U.S.C. § 6511). The United States has provided no evidence of contrary legislative intent.

The United States argues not applying the discovery rule would undermine the remedial purposes of the CWA. For support, the United States relies on a post-*Core* decision by a district court in the Fifth Circuit, *United States v. Aluminum Co. of Am.* [hereinafter *Alcoa*], 824 F. Supp 640 (E.D. Tex. 1993), and decisions of district courts in other circuits, *e.g.*, *Reichelt v. U.S. Army Corps of Eng'rs*, 969 F. Supp. 519 (N.D. Ind. 1996). In determining that the statute of limitations runs from the date of the government's discovery of CWA violations under § 2642, the *Alcoa* court reasoned that "[t]he language of a statute of limitations must be 'interpreted in the light of the general purposes of the statute and its other provisions, and with due regard to those practical ends

which are to be served by any limitation of the time within which an action must be brought.'" 824 F. Supp. at 644–45 (quoting *Core*, 759 F.2d at 481–82). Noting that "[t]he objective of the CWA is to protect human health, welfare, and the environment, to eliminate the discharge of all pollutants to waters of the United States, and to restore the chemical, physical and biological integrity of the Nation's waters," *id.* at 645 (citing 33 U.S.C. § 1251(a)), the court held that the statute of limitations should run from when the EPA should have known of the violations through the exercise of due diligence, at the earliest. *Id.* at 644–647.

The *Alcoa* court's decision is inconsistent with *Core* and other decisions. The reasoning of *Core,* which is consistent with other case law, appears to leave no room for equitable exceptions to § 2462. In *Core*, the government attempted to use cases concerning other statutes of limitations, the court determined that the statutory language of previous versions § 2462 made those cases irrelevant. 759 F.2d at 482. The clear language and the cases defining its accrual date were dispositive. As a result, the *Core* court called the cases on which it relied "directly on point" and considered the government's reliance on other cases unjustified. *See id.*[3] The *Alcoa* court misconstrued the language from *Core* cited to support an expansive approach to the CWA. *See* 824 F. Supp. at 644–45. The cited language explained why the *Core* court considered "[c]ases dealing with other limitations statutes of little value." *Core*, 759 F.2d at 481. Here, as in *Core*, the question is the language and construction of § 2462, in particular, not of the CWA generally. The *Core* court focused on cases interpreting § 2462 because those cases were conclusive. *Id.* at 481–82.

Even if the overall purpose of the CWA is relevant to determining whether § 2462 is subject

---

[3] The *Core* court also noted other reasons for its conclusion but suggested that those other reasons were not necessary to its holding. For example, the review of legislative history merely showed that "Congress shares this common understanding" of § 2462. *Id.*

11

to the discovery rule, the *Alcoa* court's description of that purpose is incomplete. The CWA is obviously an environmental protection measure, but in establishing and setting the limitations period, Congress recognized other interests as well. Congress balanced the environmental interests with concern for "the problems of faded memories, lost witnesses and discarded documents in penalty proceedings" that could occur long after any violations occurred—the concerns justifying a statute of limitations. *3M Co.*, 17 F.3d at 1461; *accord Core*, 579 F.3d at 480 (noting the "right to be free of stale claims, which comes in time to prevail over the right to prosecute them"). The United States provides no argument or reason to conclude that its interest in obtaining civil penalties under the CWA is stronger than it was in *Core*. Like the *Core* and *3M Co.* courts, this court holds that § 2462's statute of limitations runs from the date of the violation, not the date of its discovery.[4]

### 2.    The Continuing Violations Exception

The United States argues in the alternative that Brown Water Marine's and Caillou Island Towing's failures to remedy their discharges are continuing violations that allow civil penalties even for discharges that occurred than five years before. "A continuing violation applies where the conduct is ongoing, rather than a single event." *Interamericas Investments, Ltd. v. Bd. of Governors of the Fed. Reserve Sys.*, 111 F.3d 376, 382 (5th Cir. 1997). Whether a violation is continuing so as to toll the running of § 2462's five-year limitations period depends on the obligations created by the statute to which § 2462 applies. *See id.* (considering this question by evaluating "the substantive statute underlying the [government's] claim . . . to determine whether it contemplates a continuing violation theory). If obligations are continuing, the failure to meet those obligations creates a

---

[4] The conclusion that the discovery rule does not apply to § 2462 makes it unnecessary to consider the parties' arguments about when the United States should have discovered the 2003 discharges.

continuing violation.

To determine whether an ongoing obligation is imposed, courts look first to the language of the statute. *Id.* at 383.[5] "Where a statute is unambiguous and there is no room for interpretation or construction of [a] provision, [a court] cannot circumvent its clear words." *Zapata Haynie Corp. v. Arthur*, 926 F.2d 484, 487 (5th Cir. 1991). Courts have split as to whether the CWA creates a continuing obligation to remedy the effects of violations. *Compare Sasser v. Adm'r, EPA*, 990 F.2d 127, 129 (4th Cir. 1993) ("Each day the pollutant remains in the wetlands without a permit constitutes an additional day of violation."), *with United States v. Telluride Co.*, 884 F. Supp. 404, 406–08 (D. Colo. 1995), *rev'd on other grounds*, 146 F.3d 1241, 1244, 1249 (10th Cir. 1998). The section of CWA at issue prohibits the "discharge of any pollutant," "[e]xcept in compliance with" with certain other sections of the CWA. 33 U.S.C. § 1311(a).[6] For the purposes of this case, the CWA defines "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source." *Id.* § 1362(12)(A). "Addition" can mean either "the act or process of adding" or "the result of adding." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 55 (1990). Section 1311(a)'s use of the phrase "in compliance with" and the placement of "by any person" behind the word "discharge" points toward the former definition, which indicates a discrete action, instead of the result of that action. Ordinarily, one speaks of an action done "by a person," "in compliance with" rules. This ordinary meaning is dispositive. *Kornman & Assocs. v. United States*, 527 F.3d 443, 451 (5th Cir. 2008) ("A fundamental canon of statutory construction instructs that in the

---

[5] Courts also consider regulations to assist in defining the obligation. *Newell Recycling Co. v. EPA*, 231 F.3d 204, 206–07 (5th Cir. 2000). The United States has not indicated any regulations that would apply or assist this court in defining the statutory obligation.

[6] Section 1311(a) reads, "Except as in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and 1344 of this title, the discharge of any pollutant by any person shall be unlawful."

absence of a statutory definition, we give terms their ordinary meaning." (citations and quotations omitted)). Once the violator stops adding a pollutant in violation of a permit, the violation itself is over. What remains are the effects of the violation, but absent a continuing obligation that is itself violated, the effects are not themselves violations. *See United States v. Scruggs*, Civ. A. No. G-06-776, 2009 WL 81921, at *6, *11 (S.D. Tex. Jan. 12, 2009) (citing *Hamker v. Diamond Shamrock Chem. Co.*, 756 F.2d 392, 397 (5th Cir. 1985)); *Nat'l Parks & Conservation Ass'n v. TVA*, 502 F.3d 1316, 1322 (11th Cir. 2007) ("In determining whether to characterize a violation as continuing, it is important to distinguish between the present consequences of a one-time violation, which do not extend the limitations period, and a continuation of a violation into the present, which does." (quotation marks omitted)); *see also Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 69 (1987) (Scalia, J., concurring in the judgment) (distinguishing between "be[ing] in violation," "violating," and "hav[ing] committed a violation"). A discharge in violation of the obligation at issue under § 1311(a) is not a continuing violation on the basis that the discharger fails to remedy its effects.

The United States cites three cases in support of its argument that the CWA creates a continuing duty until damage from a violation is remedied: *Sasser v. Administrator, EPA*, 990 F.2d 127, 129 (4th Cir. 1993); *United States v. Reaves*, 923 F. Supp. 1530, 1533–34 (M.D. Fla. 1996); and *United States v. Ciampitti*, 669 F. Supp. 684, 699–700 (D. N.J. 1987).[7] These cases, however, are not based on the statutory duty to refrain from the unauthorized discharge of pollutants. The cases in turn are based on cases whose holdings and rationales are not applicable here: a case that

---

[7] These cases are related. *Reaves* cites *Sasser, Reaves*, 923 F. Supp. at 1533–34; which cites *Ciampitti*, *Sasser*, 990 F.2d at 129. They also cite other cases, as discussed below.

14

involved an injunction instead of violations of the CWA itself, *United States v. Tull*, 615 F. Supp. 610, 626 (1983), *rev'd on other grounds sub nom. Tull v. United States*, 481 U.S. 412, 427 (1987)[8]; another case that merely included the failure to remedy environmental damage as one factor favoring civil penalties, *Ciampitti*, 669 F. Supp. at 699–700[9]; and a third case that made a policy argument foreclosed by the language of the CWA, *N.C. Wildlife*, 1989 WL 106517, at *2.[10]  The cases cited do not provide persuasive support for the government's argument.  The fact that courts have the statutory authority to issue injunctions requiring violators to remedy the effects of their violations instead of paying monetary damages does not mean that the violations themselves are "continuing."  Courts have long acted in equity to compel action beyond payment when monetary damages are insufficient to remedy the harm caused.  *See eBay v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ("well-established principles of equity" enable a court to enter an injunction when "remedies available at law, such as monetary damages, are inadequate to compensate for that injury").  Similarly, considering a violator's refusal to comply with an injunction requiring remediation as a factor in imposing a civil penalty is consistent with the CWA's directive to courts to consider any "matters as justice may require," 33 U.S.C. § 1319(d), but does not suggest that the failure is itself a continuing violation of the underlying statute.  *See Ciampitti*, 669 F. Supp. at 699–700.

Finally, a court cannot use policy considerations to reach a result inconsistent with statutory

---

[8] *Tull* comes to *Sasser* through another case's reliance on *Tull* for the proposition that a CWA violation continues until its effects are remedied.  *Sasser*, 990 F.2d at 129 (citing *United States v. Cumberland Farms of Conn., Inc.*, 647 F. Supp. 1166, 1183 (D. Mass. 1986) ("A day of violation constitutes not only a day in which Cumberland was actually using a bulldozer or backhoe in the wetland area, but also every day Cumberland allowed illegal fill material to remain therein.")).

[9] *Stasser* and a case cited by *Reaves* rely on *Ciampitti*.  *Sasser*, 990 F.2d at 129; *Reaves*, 923 F. Supp. at 1534 (citing *N.C. Wildlife*, 1989 WL 106517, at *2).

[10] *Reaves* cites *N.C. Wildlife* as authority.  *Reaves*, 923 F. Supp. at 1533–34.  *N.C. Wildlife* also relies on *Ciampitti*.  *N.C. Wildlife*, 1989 WL 106517, at *2.

language. The *N.C. Wildlife* court emphasized the harm caused by the discharges the statute prohibited in concluding that "[t]reating the failure to take remedial measures as a continuing violation is eminently reasonable. This is because it is not the physical act of discharging dredge wastes itself that leads to the injury . . . , but the *consequences* of the discharge in terms of lasting environmental degradation." 1989 WL 106516, at *2 (emphasis in original). *N.C. Wildlife* did not address the statutory limitations language at issue here. Instead, that court dealt with whether an entity is "in violation" of the CWA for the purpose of conferring citizen-suit standing under 33 U.S.C. § 1365. *Id.* at *2–*3.[11] In that context, the emphasis on the effects of violations was consistent with a concurrence by Justice Scalia that distinguished between being "in violation"—the relevant question in *N.C. Wildlife*—and "to be violating." *Id.* at *2 (citing *Gwaltney*, 484 U.S. at 69 (Scalia, J., concurring in the judgment)). According to Justice Scalia, being "in violation" is a "state rather than an act." *Gwaltney*, 484 U.S. at 69. Whether a violation is continuing, however, asks about the act of violating the statute. *See Interamericas Investments*, 111 F.3d at 382 (defining a "continuing violation" as one "where the conduct is ongoing"). There is no language at issue in this case that establishes an ongoing duty that was violated on a continuing basis. Once the violator ceases its discharging, its violation ends and the statute of limitations begins to run. *See* 33 U.S.C. § 1311(a).

The United States also contends that *Newell Recycling Co. v. EPA*, 231 F.3d 204 (5th Cir. 2000), is analogous. In that case, Fifth Circuit held that the duty to dispose of waste properly was

---

[11] Another citizen-suit case, *Chesapeake Bay Found. v. Gwaltney of Smithfield, Inc.*, comes to *Sasser* by way of *Cumberland Farms*. *Sasser*, 990 F.2d at 129 (citing *Cumberland Farms*, 647 F. Supp. at 1183 (citing *Chesapeake Bay Found. v. Gwaltney of Smithfield, Ltd.*, vacated sub nom. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49, 68 (1987)). *Chesapeake Bay* never found that a continuing violation existed, as it determined that the citizen-suit provision did not require a continuing violation. 791 F.2d at 1547–1551.

a continuing duty. *Id.* 207. *Newell Recycling* relied on a regulation that treated stockpiling waste as an ongoing violation of the required disposal process. *Id.* at 207–08. The defendant in that case stockpiled a pollutant for years in violation of the regulations. The years of stockpiling constituted the continuing violation. *Id.* at 208. The prohibited activities in the present case, however, do not involve one phase of an ongoing process, unlike *Newell Recycling.* Instead, Brown Water Marine's and Caillou Island Towing's alleged violations were complete when the specific incidents of prop washing ended. *Newell Recycling* is not analogous.

In evaluating the parties' arguments, this court has been mindful of the need to interpret the CWA liberally to effect the purposes Congress identified. *See, e.g.*, *Miccosukee Tribe of Indians of Fla. v. United States, EPA*, 105 F.3d 599, 603 (11th Cir. 1997). That does not, however, permit reaching beyond the clear and unambiguous language Congress used. *Zapata Haynie Corp.*, 926 F.2d at 487. The statutory purpose is not thwarted by finding that neither the discovery rule nor the continuing violation exceptions apply. The five-year limitations period is longer than most for civil penalties or damages, and it does not apply to the government's ability to seek injunctions to enforce the CWA. *See, e.g.*, *Telluride*, 146 F.3d at 1248–49 (holding that § 2462 does not apply to injunctive relief).

Caillou Island Towing's motion is granted except insofar as it seeks to block the United States from pursuing civil penalties for its alleged involvement in the November 2003 incident. This denial is without prejudice to the company's ability to move, if appropriate, for partial summary judgment based on the argument that the amended complaint should not relate back to the date of the original complaint under FED. R. CIV. P. 15(c). Brown Water Marine's motion is granted insofar as it seeks protection from civil penalties for actions completed more than five years before the

17

government brought this action; the government cannot seek civil penalties against Brown Water Marine for any involvement in the February and March 2003 incidents.[12]

## III. The Government's Cross-Motion for a Scheduling Order

The United States asks this court to preclude the defendants from filing dispositive motions until discovery concludes. The record does not support the need for such an order. The court will consider whether some motions should be delayed until after essential discovery is concluded, but will not prohibit the defendants from filing all dispositive motions until that time.

The government's cross-motion is denied.

## IV. Conclusion

Caillou Island Towing's motion for partial summary judgment is granted in part and denied in part and Brown Water Marine's motion for summary judgment is granted in part and denied in part. The United States' cross-motion for a scheduling order is denied.

SIGNED on August 31, 2010, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

---

[12] This court recognizes that this expanded resolution of these issues differs from the general statements in the denial of Rutherford Oil Corp.'s motion to dismiss. (Docket Entry No. 15). Rutherford Oil may move for partial dismissal on the basis of this memorandum and opinion.